UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

MICHAEL SCOTT PIETILA,

                Plaintiff,

v.                                   Case No. 17-cv-1587-WED-PP

CAPTAIN WESTRA, *et al.*,

                Defendants.

---

**DECISION AND ORDER GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE (DKT. NO. 2), DENYING THE PLAINTIFF'S MOTION AND SECOND MOTION TO APPOINT COUNSEL (DKT. NOS. 5, 8) AND SCREENING THE COMPLAINT (DKT. NO. 1)**

---

        This case is assigned to Magistrate Judge William E. Duffin. The plaintiff has consented to Judge Duffin's authority to resolve the case, but because the defendants have not yet been served, they have not had the opportunity consent. For that reason, the case is before this court for the limited purpose of screening the complaint and resolving pending motions. The case will return to Judge Duffin after entry of this order.

**I.    THE PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYMENT OF THE FILING FEE**

        The Prison Litigation Reform Act ("PLRA") applies to this case because the plaintiff was incarcerated when he filed the complaint. 28 U.S.C. §1915. The PLRA allows an incarcerated plaintiff to proceed with a lawsuit in federal court without pre-paying the full civil case filing fee so long as he pays an

1

initial partial filing fee. 28 U.S.C. §1915(b). Once the plaintiff pays the initial partial filing fee, he can pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On December 1, 2017, Judge Duffin assessed an initial partial filing fee of $0.11. Dkt. No. 7. The plaintiff then filed a letter explaining that he could not pay this amount because the Department of Corrections ("DOC") takes all of his money to pay for court ordered restitution. Dkt. No. 9. He told the court that he had not made any canteen purchases or otherwise spent his money. Id.

Section 1915(b)(4) provides that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee." "Section 1915(b)(4) comes into play only when 'the prisoner has no assets and no means by which to pay the initial partial filing fee.'" Lindell v. McCaughtry, No. 01-C-209-C, 2004 WL 225074, at *1 (W.D. Wis. Jan. 23, 2004). "A prisoner with periodic income has 'means' even when he lacks 'assets.'" Id.

The court reviewed the plaintiff's trust fund activity statement. Dkt. No. 6. Although he has average monthly deposits of $0.46, he does not have access to this money because the entire amount is automatically withdrawn each month to pay for restitution, a medical co-pay and legal loans. Id. The court concludes that the plaintiff has neither the assets nor the means to pay the initial partial filing fee. It will waive the initial partial filing fee and will allow the plaintiff to proceed without prepayment of the fee.

## II. SCREENING OF THE PLAINTIFF'S COMPLAINT

### A. Standard for Screening Complaints

The PLRA requires federal courts to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court may dismiss a case, or part of it, if the claims alleged are "frivolous or malicious," fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915(e)(2)(B).

To state a claim under the federal notice pleading system, the plaintiff must provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). The complaint need not plead specific facts, and need only provide "fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Labels and conclusions" or a "formulaic recitation of the elements of a cause of action" will not do. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555).

The factual content of the complaint must allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Allegations must "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Factual allegations, when accepted as true, must state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678.

Federal courts follow the two-step analysis in Twombly to determine whether a complaint states a claim. Id. at 679. First, the court determines whether the plaintiff's legal conclusions are supported by factual allegations. Id. Legal conclusions not supported by facts "are not entitled to the assumption of truth." Id. Second, the court determines whether the well-pleaded factual allegations "plausibly give rise to an entitlement to relief." Id. The court gives *pro se* allegations, "however inartfully pleaded," a liberal construction. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).

B. Facts Alleged in the Complaint

The plaintiff is incarcerated at the Waupun Correctional Institution ("WCI"). Dkt. No. 1. The defendants are Captain Westra, Correctional Officer Roper, Sergeant Schmidt, Nurse York, Correctional Officer Arrohnson and Correctional Officer Clark. Id. The plaintiff also names "WCI prison facility" as a defendant. Id.

The plaintiff alleges that on April 1, 2017, all of the named defendants used excessive force against him, sexually assaulted him, stuck him with a needle without his permission, and smeared his body with an unknown substance while sexually violating him after cutting his segregation uniform away on camera. Id. at 2. The plaintiff indicates that at the time this happened, he believed that he was working for Donald Trump as "an undercover boss as the governor of the State of Wisconsin." Id. The plaintiff says that he believed

4

that the plaintiff was "related to him" and that "it was for a whistle-blowing lawsuit against the Wisconsin Department of Corrections." Id. at 2-3.

The plaintiff indicates that "they" used an entire can of "bear spray OC" on him to try to get him to submit. Id. at 3. He indicates that after this happened, defendant Roper—the "team leader"—was the first person to enter the shower cage. Id. The plaintiff alleges that Roper tried to pull the plaintiff's neck out of socket to either incapacitate him or kill him. Id. He indicates that someone else was choking him at that time, while a third person "was using the pressure points behind [his] neck." Id. The plaintiff says that he heard female voices "screaming for [him] to give up," and that he did. Id.

The plaintiff alleges that "they" then made him stand up and walk out to the "strip cages" in the residential housing unit, where they forcefully cut off his clothes. Id. He says that as he stood crying and asking why "they" were doing this to him, someone was pinching the tip of his penis. He asserts that "they" ignored his questions, and rubbed an unknown substance all over his body. Id. at 3-4. The plaintiff alleges that "[t]hey manipulated [his] butt cheeks and sphincter muscle, [his] penis and scrotum, and cut[] [his] nipples and feet." Id. at 4. He claims that while this was going on, defendant York poked him with a needle. Id. The plaintiff says that someone—he doesn't say who—then put him in a cell with a "kilt" for some period of time. Id.

The plaintiff alleges that defendant Westra wrote the plaintiff a "ticket" after the incident. Id. Westra also conducted the hearing on the ticket, refused

5

to allow the video to be played at the hearing because of "security concerns," and issued a disposition of "120 days." Id.

The plaintiff seeks monetary damages and transfer to another institution. Id. at 5. He also asks for all of the defendants to be charged with crimes in a court of law. Id.

    C.    <u>Legal Analysis</u>

To state a claim under 42 U.S.C. §1983, the plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. <u>Buchanan-Moore v. County of Milwaukee</u>, 570 F.3d 824, 827 (7th Cir. 2009) (citing <u>Kramer v. Vill. of N. Fond du Lac</u>, 384 F.3d 856, 861 (7th Cir. 2004)).

The plaintiff named "WCI Prison Facility"—the Waupun Correctional Institution—as one of the defendants. "[S]tates and their agencies are not 'persons' subject to suit under 42 U.S.C. § 1983." <u>Johnson v. Supreme Court of Ill.</u>, 165 F.3d 1140, 1141 (7th Cir. 1999). This means that "[n]either the State of Wisconsin nor the State's Department of Corrections is a proper defendant." <u>Andreola v. Wisconsin</u>, 171 F. App'x 514, 515 (7th Cir. 2006). Waupun Correctional Institution is one of several institutions within the Department of Corrections. Because it is not a "person" subject to suit under §1983, the court will dismiss "WCI Prison Facility" as a defendant.

        1.    *Eighth Amendment Excessive Force Claim*

The Eighth Amendment prohibits prison authorities from "unnecessarily

6

and wantonly inflicting pain on inmates." See Rivera v. Drake, 497 F. App'x 635, 637 (7th Cir. 2012). Use of force that is maliciously motivated, unrelated to institutional security, and lacks a legitimate penological justification violates the Eighth Amendment. Id. (citing Hope v. Pelzer, 536 U.S. 730.737 (2002)). "Infliction of pain that is totally without penological justification is *per se* malicious." Fillmore v. Page, 358 F.3d 496, 504 (7th Cir. 2004).

The plaintiff states that all of the individual defendants (Westra, Roper, Schmidt, York, Arrohnson and Clark) were involved in assaulting him on April 1, 2017. He states that they had no reason to assault him and that it caused unnecessary pain. The plaintiff did not specifically explain what Schmidt, Arrohnson or Clark did during the alleged assault, but his allegations indicate that there were several people involved other than Roper, Westra and York. At this early stage, the court finds that the plaintiff has alleged sufficient facts to proceed on a claim for excessive force.

        2.     *Fourteenth Amendment Procedural Due Process Claims*

The plaintiff also alludes to procedural violations during his "ticket" hearing for the April 1, 2017 incident, arguing that Westra both wrote the ticket and conducted the hearing, and that Westra refused to allow a video to be played at the hearing. He complains that he received a 120-day segregation sanction although it was he who was assaulted.

A prisoner challenging the process afforded in a prison disciplinary proceeding must show that: (1) he has a liberty or property interest with which the state interfered; and (2) the procedures he was afforded upon that

7

interference were constitutionally deficient. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989); Marion v. Columbia Corr. Inst., 559 F.3d 693, 697 (7th Cir.2009); Scruggs v. Jordan, 485 F.3d 934, 939 (7th Cir.2007). "A prisoner has no liberty interest in remaining in the general population." Lekas v. Briley, 405 F.3d 602, 607 (7th Cir. 2005). To implicate the due process clause regarding placement in segregation, a plaintiff must allege that his duration of segregation along with the conditions of segregation constituted an "atypical and significant hardship." Sandin v. Conner, 515 U.S. 472, 484 (1995).

The plaintiff got a hearing on the ticket. The simple fact that Westra both wrote the ticket and conducted the hearing does not render that hearing constitutionally ineffective. The plaintiff does not explain what was in the video, or what effect it would have had on the hearing. As for the 120-day segregation sanction, the plaintiff has not alleged that the duration of the sanction was such that it violated due process, or that the conditions of his segregation constituted an atypical hardship. The plaintiff may disagree with the sanction, but that does not constitute a constitutional violation. The court will not allow the plaintiff to proceed on Fourteenth Amendment or procedural due process claims against Westra.

### III. THE PLAINTIFF'S MOTIONS TO APPOINT COUNSEL

The plaintiff has filed two motions, asking the court to appoint counsel to represent him. Dkt. Nos. 5, 8. He states that he has been diagnosed with mental illness, dkt. no. 5 at 1, and that he is "severely overwhelmed with trying to figure out how to go forward with these 4 cases," dkt. no. 8 at 1.

In a civil case, the court has discretion to recruit a lawyer for someone who cannot afford one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013). The litigant first must make reasonable efforts to hire private counsel on his own. Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007). In this district, a plaintiff can satisfy this requirement by providing the court with: (1) the attorneys' names, (2) the addresses, (3) the date and way the plaintiff attempted to contact them, and (4) the attorneys' responses.

Once the plaintiff makes reasonable attempts to hire counsel, the court then decides "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." Navejar, 718 F.3d at 696 (citing Pruitt, 503 F.3d at 655). The court looks not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." Id. "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

The court is satisfied that the plaintiff made reasonable attempts to secure counsel on his own. See Dkt. No. 8 at 1-2. It will not, however, appoint counsel at this point in the case. The plaintiff's complaint describes what happened to him and why he believes it violated his constitutional rights, and

9

the court was able to understand it. Although the plaintiff does not have legal training, his writing is coherent.

It may be that the plaintiff is "severely overwhelmed" because he does not know what to do next. At this point in the case, there isn't anything for the plaintiff to do but wait for the defendants to file an answer. If and when the defendants file an answer, Judge Duffin will issue a scheduling order with instructions for the plaintiff on how next to proceed. Right now, there is no reason to conclude that the plaintiff cannot coherently present his case. Therefore, the court will deny his motions to appoint counsel without prejudice (which means that he can file another motion later, if things get too complicated for him to handle).

## IV. CONCLUSION

The court **GRANTS** the plaintiff's motion for leave to proceed without prepayment of the filing fee. Dkt. No. 2.

The court **ORDERS** the agency having custody of the plaintiff to collect from the plaintiff's prison trust account the **$350.00** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forward payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency shall clearly identify the payments by the case name and number. The court will send a copy of this order to the officer in charge of the agency where the plaintiff is confined. If the plaintiff is transferred to

another institution—county, state or federal—the transferring institution shall forward a copy of this order along with the plaintiff's remaining balance to the receiving institution.

The court **ORDERS** that "WCI Prison Facility" is **DISMISSED** as a defendant.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 5.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's second motion to appoint counsel. Dkt. No. 8.

The court **ORDERS** that, under an informal service agreement between the Wisconsin Department of Justice and this court, copies of plaintiff's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Westra, Roper, Schmidt, York, Arrohnson and Clark. These defendants shall answer or otherwise respond to the complaint within sixty days of receiving electronic notice of this order.

The court **ORDERS** that the parties may not begin discovery until after Judge Duffin enters a scheduling order setting deadlines for discovery and dispositive motions.

The court **ORDERS** the clerk's office to return this case to Judge Duffin for further proceedings.

The court **ORDERS** that, under the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff,

who will scan and e-mail documents to the court.[1] If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

>Office of the Clerk
>United States District Court
>Eastern District of Wisconsin
>362 United States Courthouse
>517 E. Wisconsin Avenue
>Milwaukee, Wisconsin 53202

The court further advises the plaintiff that if he doesn't file documents or pleadings by the deadlines the court sets, the court may dismiss his case for failure to prosecute. The parties must notify the clerk of court of any change of address. Failure to do so could result in orders or other information not being timely delivered, which could affect the legal rights of the parties.

Dated in Milwaukee, Wisconsin this 26th day of February, 2018.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**United States District Judge**

---

[1] The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.